UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROCK HALL, individually,

Plaintiff,

v.

LIBERTY MUTUAL GENERAL INSURANCE COMPANY, DOES I-X, and ROES I-X,

Defendants.

Case No. 2:16-cv-00117-MMD-PAL

ORDER

(Def.'s Motion for Summary Judgment – ECF No. 20)

**I.    SUMMARY**

Before the Court is Defendant Liberty Mutual General Insurance Company's ("LM General") Motion for Summary Judgment ("Motion") (ECF No. 20). The Court has reviewed Plaintiff Rock Hall's response (ECF No. 28) and LM General's reply (ECF No. 30). The Court grants in part and denies in part LM General's Motion for the reasons discussed below.

**II.    BACKGROUND**

Hall was involved in a car accident on or about October 29, 2014, that left him with significant medical expenses and ongoing physical ailments. (ECF No. 10 at 2-3.) Hall received $100,000 of insurance benefits on behalf of the other driver from the accident. (ECF No. 20 at 3.) Hall now seeks to recover additional benefits from his insurer, LM General, pursuant to his auto policy's underinsured/uninsured motorist ("UM") clause. (ECF No. 10 at 3.) The UM clause obligates LM General to pay "compensatory damages which an 'insured' is legally entitled to recover from the owner

or operator of an 'uninsured motor vehicle' because of 'bodily injury.'" (ECF No. 20-2 at 12.)

The policy requires Hall to comply with certain duties before LM General becomes obligated to provide coverage. (*Id.* at 17.) These duties include cooperating with LM General in the investigation, settlement, or defense of any claim. (*Id.*)

LM General conducted an investigation of Hall's UM claim primarily through correspondence with Hall's counsel by mail. LM General made seven requests for information after the accident over the course of about a year (from October 31, 2014, to November 3, 2015) based on exhibits provided to the Court. Hall provided materials that were only partially responsive to these requests in a demand package sent to LM General on September 29, 2015. Hall's counsel provided unspecified additional medical records on May 4, 2016, but otherwise Hall's counsel apparently ignored LM General's requests. The correspondence between LM General and Hall's counsel is set out in detail below.

LM General sent its first letter regarding the accident directly to Hall (asking him to forward all medical bills arising from the accident to LM General) a couple days after the accident, on October 31, 2014. (ECF No. 20-3 at 2.) Hall's counsel responded with a letter of representation about a month and a half later, on December 12, 2014 (ECF No. 20-4 at 2), and LM General began sending all correspondence regarding the accident to Hall's counsel (ECF No. 20 at 6-7).

LM General sent a letter to Hall's counsel requesting itemized medical bills, medical records, and Hall's social security and Medicare numbers on January 9, 2015. (ECF No. 20-5 at 2.) Hall's counsel did not respond but months later sent a letter to LM General notifying it that Hall intended to make a UM claim, on May 21, 2015. (ECF No. 20-6 at 2.)

LM General then sent a series of three letters to Hall's counsel over the course of four months requesting the following: medical records (ECF No. 20-7 at 2), a signed release for medical records (*id.* at 3-4), lost wage records (*id.* at 2), a signed release for

2

lost wage records (*id.* at 5-6), an interview with Hall about the accident and his injuries (*id.* at 2), an update as to the status of Hall's medical care (including "diagnosis, prognosis, treatment, medical bills & wage loss incurred to date and anticipated release date") (ECF No. 20-8 at 2), confirmation of the other driver's policy limit (*id.*), confirmation that the other driver was a named insured on her policy (*id.*), an affidavit from the other driver asserting that she has no other insurance (*id.*), a demand package with itemized bills and records (ECF No. 20-9 at 2), wage loss documentation and support of disability from Hall's treating physicians (*id.*), estimates of future medical care including costs (*id.*), a copy of the other driver's policy (*id.*), Hall's medical records for the five years preceding the accident (*id.*), and an affidavit from the other driver asserting that there is no other valid insurance available for Hall's loss (*id.*).

Hall's counsel provided LM General with a demand letter purportedly directed to LM General[1] (ECF No. 28-10 at 2-4), medical records and itemized bills related to the accident (*id.* at 8-90), a signed release for medical records[2] (*id.* at 5), Hall's social security number (*id.*), profit and loss records for Hall's business since the accident (*id.* at 6-7), a copy of the demand Hall had made on the other driver's insurer (ECF No. 20-10 at 5-8), confirmation of the other driver's policy limit (*id.* at 4), and confirmation that the other driver was a named insured on her policy, all on September 29, 2015. (*Id.*) Hall's counsel also seems to have provided a "recommendation for future medical care." (*See* ECF No. 20-11 at 2 (acknowledging receipt).) At least the following of LM General's requests apparently remained outstanding: Hall's Medicare number, a signed release for lost wage records, records of Hall's disability from his treating physicians, an interview with Hall about the accident and his injuries, Hall's prior five years of medical history, and ///

---

[1]Although the demand letter is not addressed to LM General, it bears a different date (September 29, 2015) than the demand letter sent to the other driver's insurer (March 11, 2015). (*Compare* ECF No. 28-10 at 2 *with* ECF No. 20-10 at 5.)

[2]Albeit with the space describing "[t]he entity to whom this authorization is directed" left blank.

3

an affidavit from the other driver that there is no other valid insurance available for Hall's loss.

LM General acknowledged receipt of the September 29, 2015, records and requested the following additional materials on October 27, 2015: missing pages from certain medical records; lost wage records (including confirmation of dates of disability from Hall's physicians); and a list of providers, dates of services, and charges. (ECF No. 20-11 at 2.)

LM General apparently discovered that Hall was planning to file a lawsuit against it in a telephone conversation with staff at the office of Hall's counsel on November 3, 2015. (*See* ECF No. 20-12 at 2.) LM General then sent a letter to Hall's counsel requesting a courtesy copy of the complaint; an independent medical examination of Hall prior to surgery; "copies of all medical records, bills, wage loss documents and support for the disability from Mr. Hall's treating physicians;" a description of Hall's occupation and job requirements; tax returns for the five years preceding the accident; and medical history for ten years preceding the accident, including prior diagnostic tests. (*Id.*) LM General provided unsigned releases for Hall to complete if he preferred LM General obtain the records itself. (*Id.*)

Hall then filed suit against LM General alleging *inter alia* breach of contract, breach of implied covenant, and violation of the Unfair Claims Practices Act on November 18, 2015. (ECF No. 20 at 7.)

Hall's counsel provided additional medical records on May 4, 2016.[3] (ECF No. 28-9 at 2.)

**III. LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to

---

[3]Although Hall's counsel suggested in briefing (ECF No. 28 at 4) and in the title of his exhibit (ECF No. 28-9 at 1) that the letter was dated May 4, 2015, the letter appears to be from May 4, 2016. The letter is dated May 4, 2016 and references a February 10, 2016, letter. (*Id.* at 2.)

4

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is material if it could affect the outcome of the suit under the governing law. *Id.*

Summary judgment is not appropriate when "reasonable minds could differ as to the import of the evidence." *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is [that which is] enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Decisions granting or denying summary judgment are made in light of the purpose of summary judgment "to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008). If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank*

*of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

Hall's First Amended Complaint contains six counts, but the Court finds that resolution of LM General's Motion requires the Court to consider only Hall's claims for breach of contract[4] (Count I), breach of the implied covenant of good faith and fair dealing (Count III), and violation of the Unfair Claims Practices Act (Count IV).

Hall's tortious breach of contract claim (Count II) duplicates his breach of implied covenant claim. *Chavez v. California Reconveyance Co.*, No. 2:10-cv-00325-RLH-LRL, 2010 WL 2545006, at *4 (D. Nev. June 18, 2010) ("State claims for tortious breach of contract have been recognized in Nevada as a tort claim of breach of the implied covenant of good faith and fair dealing.") Hall's claims for declaratory relief (Count V) and attorney's fees (Count VI) resolve consistently with the underlying claims in Counts I, III, and IV.

### A.  Bad Faith

The crux of Hall's complaint is that LM General has delayed settling Hall's UM claim in bad faith. Hall argues that he provided "sufficient medical records and a complete demand letter by no later than September [2]9, 2015," but LM General "manufactured a new checklist of hoops for Mr. Hall to jump through in its next letter;" "sent out a barrage of further overreaching demand letters;" "delayed the claims process;" "constantly request[ed] additional information;" and ultimately failed to "provid[e] a timely evaluation." (ECF No. 28 at 6-7.)

In Nevada, "an insured may institute a bad faith action against his or her insurer once the insured establishes 'legal entitlement' and unreasonable conduct by the insurer

///

---

[4] The Court construes Hall's "underinsured motorist claim" as a breach of contract claim. (*See* ECF No. 10 at ¶ 15 ("A UM claim is one of a contractual nature.").)

6

concerning its obligations to the insureds."[5] *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 384 (Nev. 1993). "Because the touchstone in determining bad faith is reasonableness, bad faith is usually a question of fact for the jury." *Andrew v. Century Sur. Co.*, No. 2:12-cv-00978-APG-PAL, 2014 WL 1764740, at *10 (D. Nev. Apr. 29, 2014) (citing *Allstate Co. v. Miller*, 212 P.3d 318, 325 (Nev. 2009)). The Court concludes that Hall has shown legal entitlement to some of the damages he claims as well as a genuine issue of material fact regarding the reasonableness of LM General's conduct.

### 1. Legal Entitlement

Legal entitlement is a term of art that requires a showing of "fault by the tortfeasor and the extent of damages." *Pemberton*, 858 P.2d at 384. Legal entitlement is an essential element common to both of Hall's contractual claims. Hall's breach of contract claim depends on a showing of legal entitlement because Hall's insurance policy only obligates LM General to pay damages an insurer is "legally entitled to recover." (ECF No. 20-12 at 12.) Hall's breach of implied covenant claim depends on a showing of legal entitlement under Nevada law. *Pemberton*, 858 P.2d at 384 ("[A]n insured may institute a bad faith action against his or her insurer once the insured establishes 'legal entitlement' and unreasonable conduct by the insurer concerning its obligations to the insureds.").

LM General does not dispute fault by the tortfeasor but argues that Hall cannot show the extent of his damages, specifically with respect to future medical expenses, lost wages, and lost profits. The Court finds that LM General has failed to carry its initial burden of showing that no genuine issue of material fact exists in relation to Hall's legal entitlement to future medical expenses and lost wages. Regarding lost profits, however, the Court finds that Hall has failed to show legal entitlement.

---

[5]Although this Court has held that an insured must receive a denial before instituting a bad faith action, *see, e.g., Joseph v. Hartford Fire Ins. Co.*, No. 2:12-cv-798-JCM-CWH, 2014 WL 4829061, at *4 (D. Nev. Sept. 30, 2014), the Court finds that a bad faith claim premised on an insurer's unreasonable delay in evaluating a claim must be permitted to proceed. To conclude otherwise would allow insurers to string along their insureds indefinitely without recourse. *See also Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1257 (D. Nev. 2016) ("[S]itting on a claim for an extended period is functionally equivalent to a denial.")

7

### a. Future Medical Expenses

LM General argues that Plaintiff cannot prove future medical expenses for surgery or injection therapy. "[A] plaintiff seeking future medical expenses 'must establish that such future medical expenses are reasonably necessary,' and that the contemplated damages are reasonably certain to be incurred." *York v. Smith*, Nos. 49529, 50209, 2010 WL 3270228, at *2 (Nev. July 6, 2010) (internal citations omitted). Regarding surgery, Hall has failed to show reasonable certainty that the cost will be incurred. Hall did not contradict his deposition testimony that he "would be highly skeptical that [he] would proceed with any surgery" (ECF No. 20 at 8), though he contended that he may pursue surgery if the pain becomes unmanageable through alternative means (ECF No. 28 at 9). Hall has failed to show that future injections are reasonably necessary (*see id.* at 10-11), having neglected to offer evidence to contradict Dr. Prater's testimony that injections would not provide Hall any therapeutic benefit. (ECF No. 20 at 10.)

However, Hall is reasonably likely to pursue medical treatment other than surgery and injections. Hall "has provided three expert opinions which indicate that surgery is not the only available treatment."[6] (ECF No. 28 at 11.) LM General did not argue that Hall could not prove the necessity and certainty of all future medical expenses; it argued only that Hall could not prove the necessity and certainty of two potential medical expenses—those for surgery and injections. LM General has failed to carry its burden of showing that there is no genuine issue of material fact regarding the cost of future medical care.

### b. Lost Wages

LM General argues that Hall is unable to recover damages for lost wages because he was self-employed and voluntarily chose not to pay himself once he realized he was unable to work. (ECF No. 20 at 14.) Self-employed individuals may recover damages for lost wages. *See Mensah v. CorVel Corp.*, 356 P.3d 497, 497 (Nev. 2015)*, reh'g denied*, (Nev. Oct. 29, 2015) ("[F]or self-employed individuals, the lack of a salary associated with typical employment does not necessarily prevent an average monthly

---

[6]Hall may seek a spinal cord stimulator, for instance. (ECF No. 20-15 at 38.)

8

wage calculation for the purpose of determining lost income and rendering a workers' compensation benefit decision); *see also Glassman v. United States*, No. C 02-5154 PJH, 2005 WL 1692615, at *12 (N.D. Cal. July 15, 2005) (awarding lost wages damages to a self-employed individual). Hall's so-called choice to discontinue paying himself was voluntary only in the most technical sense—he could no longer work due to chronic pain resulting from the accident. (ECF No. 28 at 3-4.) The Court concludes that Hall may recover lost wages even though he was self-employed.

### c. Lost Profits

LM General argues that Hall will not be able to prove the amount of his lost profits from investments because it is not certain that profits would have materialized at all. (ECF No. 20 at 10.) "In a breach of contract action, 'lost profits are generally an appropriate measure of damages so long as the evidence provides a basis for determining, with reasonable certainty, what the profits would have been had the contract not been breached.'" *Georges Tannoury, MD, P.C. v. Stacey Kokopelli Med., P.C.*, No. 58321, 2014 WL 1270582, at *1 (Nev. Mar. 26, 2014) (quoting *Eaton v. J. H., Inc.*, 581 P.2d 14, 17 (Nev. 1978)). "The rule barring recovery of uncertain lost profits is directed against 'uncertainty as to the existence of (profits) rather than as to measure or extent.'" *Gen. Elec. Supply Co. v. Mt. Wheeler Power, Inc.*, 587 P.2d 1312, 1313 (Nev. 1978) (quoting *Fireman's Fund Ins. v. Shawcross*, 442 P.2d 907, 912 (Nev. 1968)). LM General has shown that there is no issue of material fact through Hall's testimony that "deals were not put in place and . . . there was not a specific agreement for accepting the services to make the money." (ECF No. 20-14 at 29.) Although these were the words of LM General's attorney, Hall expressly agreed with this characterization. Hall has not disputed this fact and has thus failed to show a genuine issue of material fact regarding lost profits.

The Court concludes that LM General has failed to carry its burden of showing no genuine issues of material fact with respect to Hall's future medical costs and lost wages. The Court also concludes that Hall cannot show legal entitlement to lost profits.

## 2. Unreasonable Conduct

In addition to legal entitlement, a plaintiff alleging bad faith on the part of an insurer must show that the insurer engaged in unreasonable conduct. *Pemberton*, 858 P.2d at 384. To show unreasonable conduct, a plaintiff must establish that the insurer "acted unreasonably and with knowledge that there was no reasonable basis for its conduct." *Sierzega v. Country Preferred Ins. Co.*, 650 F. App'x 388, 389 (9th Cir. 2016) (quoting *Guar. Nat'l Ins. v. Potter*, 912 P.2d 267, 272 (Nev. 1996)). "An insurer is not entitled to summary judgment where a jury could reasonably conclude that the insurer acted unreasonably." *Hat v. Depositors Ins. Co.*, 339 F. App'x 764, 764–65 (9th Cir. 2009). It is reasonable for insurers to deny claims based on genuine disputes about claim value. *See Amini v. CSAA Gen. Ins. Co.*, No. 2:15-cv-0402-JAD-GWF, 2016 WL 6573949, at *5 (D. Nev. Nov. 4, 2016) (finding that insurer reasonably disputed value of claim when it relied on two independently prepared medical reports, an independent audit of insured's medical bills showing that the amounts requested were excessive, insured's examination under oath, and the medical records provided by insured); *Sherwin v. Infinity Auto Ins. Co.*, No. 2:11-cv-00043-APG-GWF, 2013 WL 5918312, at *3 (D. Nev. Oct. 31, 2013), *aff'd*, 639 F. App'x 466 (9th Cir. 2016) (finding that insurer reasonably disputed value of claim when it relied on inconsistencies in insured's medical records including statements that insured was symptom-free); *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1096 (D. Nev. 2006) (finding that insurer reasonably disputed value of claim when its investigation revealed that the insured lost no income). Reasonable, too, are relatively short delays in processing claims, especially when the insurer lacks critical information such as medical records or, in UM cases, the other driver's policy limits. *See Sierzega*, 650 F. App'x at 389 (9th Cir. 2016) (finding that insurer's delay was reasonable when it paid UM claim after obtaining the other driver's policy limits and the insured's medical records showing that her medical costs exceeded the other driver's policy limits). It is unreasonable, however, for insurers to drag out investigations over long periods of time. *See Hackler v. State Farm Mut. Auto. Ins. Co.*,

210 F. Supp. 3d 1250, 1256 (D. Nev. 2016) (years); *Estate of Lomastro v. Am. Family Ins. Grp.*, 195 P.3d 339, 352 (Nev. 2008) (ten months). It is also unreasonable for insurers to sit on claims without rendering a decision when they possess the requisite information for deciding whether to pay. *Hat*, 339 F. App'x at 764-65.

Here, there is at least a genuine issue of material fact regarding the reasonableness of LM General's conduct. LM General had received much of the documentation it had requested in Hall's correspondence dated September 29, 2015. Apparently outstanding at that point were requests for Hall's Medicare number, a signed release for lost wage records, records of Hall's disability from his treating physicians, an interview with Hall about the accident and his injuries, Hall's prior five years of medical history, and an affidavit from the other driver that there is no other valid insurance available for Hall's loss.[7]

It is not readily apparent that these missing items were significant. Although LM General purportedly needed Hall's Medicare number to comply with federal law (ECF No. 20-5 at 2), it is not clear that Hall even had a Medicare number to provide. LM General's request for lost wage records may have been satisfied when Hall sent his business's profit and loss statements. Although Hall did not provide records of his disability from treating physicians, Hall provided a release for medical records that presumably would enable LM General to obtain those records. And the reason for Hall's failure to submit to an interview is unclear. LM General's request for an interview stated that LM General would "contact [Hall's counsel] in the near future to arrange an interview with [Hall]." (ECF No. 20-7 at 2.) Neither party has alleged that LM General actually attempted to schedule the interview. Hall did not provide prior five years of medical history, but LM General has not explained why that information was necessary to resolve

---

[7]LM General contends that it never received medical record release authorizations (ECF No. 20 at 15) but does not explain why it could not use the release authorization provided in Hall's September 29, 2015, correspondence (ECF No. 28-10 at 5). LM General also contends that it never received updates regarding Hall's conditions (ECF No. 20 at 15) but neglects to mention that Hall provided a trove of medical records in his September 29, 2015 correspondence (ECF No. 28-10 at 8-90).

11

Hall's claim. Hall also failed to provide an affidavit from the other driver that no other valid insurance was available to cover Hall's loss, but LM General could have obtained that information itself. Hall provided LM General with a letter from the other driver's insurance company directing LM General to call with any questions. (ECF No. 20-10 at 4.)

LM General requested additional information in a letter sent October 27, 2015, but it is unclear whether the information sought was necessary for it to resolve Hall's claim. LM General requested complete records from Advanced Pain Consultants (a few pages were missing); lost wage records including dates of disability from Hall's treating physicians; and a list of Hall's medical providers, dates of service, and charges. LM General could have requested the Advanced Pain Consultants records and dates of disability from Hall's physicians using Hall's completed medical records release. Viewing the facts in the light most favorable to Hall, he had already provided lost wage records in the form of his business's profit and loss statements. And LM General could have fulfilled its own request for a list of providers, dates of service, and charges by sifting through the medical records that Hall had already provided.

LM General requested additional information again on November 3, 2015, but it is unclear whether those requests were made in good faith as they were considerably more onerous than the requests LM General had previously made. LM General requested (for the first time) an independent medical examination, tax returns for five years preceding the accident, and Hall's medical history for ten years preceding the accident. Notably, these requests were made after LM General became aware of pending litigation. (*See* ECF No. 20-12 at 2.)

Based on the records that Hall provided and viewing that evidence in the light most favorable to Hall as the non-moving party, the Court finds that Hall has shown a genuine issue of material fact regarding the reasonableness of LM General's requests for information. In light of this and the Court's finding regarding legal entitlement, the Court must deny summary judgment with respect to Hall's contractual claims. Regarding

Hall's breach of contract claim, Hall has shown a genuine issue of material fact regarding the reasonableness of LM General's delay in making payment under the policy. Regarding Hall's breach of implied covenant claim, Hall has shown legal entitlement to future medical expenses and lost wages as well as a genuine issue of material fact regarding the reasonableness of LM General's conduct.

### B. Contract Conditions

LM General argues that it is not obligated to provide coverage under the insurance policy because Hall failed to comply with the policy's cooperation clause. (ECF No. 30 at 13-14.) The cooperation clause requires Hall to cooperate with LM General in the investigation, settlement, or defense of any claim. (ECF No. 20-12 at 17.) The policy requires "full compliance" with this duty. (*Id.*) LM General argues that Hall has not cooperated in the investigation of his claim because he responded only to some of LM General's requests for information. (ECF No. 30 at 14.)

"Nevada law enforces coverage conditions and precludes coverage when a violation of such a condition occurs, irrespective of prejudice to the carrier." *Joseph v. Hartford Fire Ins. Co.*, No. 2:12-cv-798-JCM-CWH, 2014 WL 4829061, at *3 (D. Nev. Sept. 30, 2014) (citing *Schwartz v. State Farm Mut. Auto. Ins.*, No. 2:07-cv-00060-KJD-LRL, 2009 WL 2197370, at *7 (D.Nev. July 23, 2009)). "When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term." *Garcia v. Mercury Cas. Co.*, No. 2:16-cv-1658-JCM-NJK, 2017 WL 2345615, at *3 (D. Nev. May 26, 2017) (quoting *Valentine v. State Farm Mut. Auto. Ins. Co.*, 105 F. Supp. 3d 1176, 1182 (D. Nev. 2015)).

While Hall did not provide all information that LM General requested, he counters that LM General's requests were made in bad faith. Hall asserts that he provided "sufficient medical records and a complete demand letter by no later than September [2]9, 2015," but LM General "manufactured a new checklist of hoops for Mr. Hall to jump through in its next letter." (ECF No. 28 at 6.) Hall also characterizes LM General's

13

requests as a "barrage of further overreaching demand letters." (ECF No. 28 at 6.) Hall has raised a genuine issue of material fact regarding the reasonableness of LM General's conduct, as explained *supra* Section IV(A)(2). Accordingly, the Court cannot conclude that Hall failed to comply with the policy's cooperation clause as a matter of law.

### C. Unfair Claims Practices

Nevada law creates a cause of action for damages against insurers who engage in "unfair practices" as defined by statute. NRS § 686A.310. Hall alleges that LM General engaged in the following unfair practices: "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies," *id.* § 686A.310(c); "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear," *id.* § 686A.310(e); and "[a]ttempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application," *id.* § 686A.310(g).

LM General has failed to address any of Hall's allegations regarding the above unfair practices. Regarding (c), LM General did not describe its standards for the prompt investigation and process of claims, nor did it explain its purportedly ever-changing and inconsistent requests for information (e.g., five years of prior medical history in ECF No. 20-9 as opposed to ten years of prior medical history in ECF No. 20-12). Regarding (e), LM General did not argue, for instance, that its liability was not reasonably clear or that it had actually made a settlement offer. Regarding (g), LM General did not make any argument that it attempted to settle for a reasonable amount. Accordingly, LM General has failed to bear its initial burden of showing that no genuine issue of material fact exists, precluding summary judgment in its favor.

///

///

14

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of LM General's Motion.

It is therefore ordered that LM General's Motion for Summary Judgment is granted in part and denied in part. The motion is granted with respect to Hall's claim for lost profits as part of damages for his contractual claims. The motion is denied in all other respects.

DATED THIS 29th day of September 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE